IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 04-12461 (ESL) |
| | : | |
| ELISEO MORALES GARCIA | : | |
| MARIBEL MENA MELENDEZ | : | |
| | : | |
| Debtors | : | CHAPTER 13 |
| | : | |
| NOREEN WISCOVITCH RENTAS | : | |
| | : | |
| Plaintiff/Trustee | : | ADVERSARY NO. 10-00170 (ESL) |
| | : | |
| vs. | : | |
| | : | |
| ORLANDO GONZALEZ CLAUDIO; | : | |
| MERCEDES GONZALEZ CLAUDIO; | : | |
| *ET AL.* | : | |
| | : | |
| Defendants | : | |

OPINION AND ORDER

Before this court is the *Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure and Pursuant to [the] Supreme Court's Decision in Stern v. Marshall* (the "*Motion to Dismiss*", Docket No. 83) filed by codefendants Héctor and René, both Torres Dávila (the "Torres Defendants"), claiming that this court lacks subject-matter jurisdiction to entertain this adversary proceeding. Plaintiff filed her *Answer* thereto and a *Supplemental Answer to Motion to Dismiss* (Docket Nos. 92 & 104) asserting that this court has subject-matter jurisdiction to entertain this core turnover adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). For the reasons stated herein, the Torres Defendants' *Motion to Dismiss* is hereby denied.

Procedural Background

Debtors Eliseo Morales García and Maribel Mena Meléndez filed a Voluntary Chapter 11 Bankruptcy Petition on December 9, 2004, Case No. 04-12461 (the "Lead Case"). On May 28, 2009, the case was converted to a Chapter 7 upon Debtors' request. See Lead Case Docket Nos. 205 & 207. On May 29, 2009, Noreen Wiscovitch-Rentas was appointed as Chapter 7 Trustee (the "Trustee" or "Plaintiff") for this case. See Lead Case Docket No. 208.

During the course of the Lead Case, two previous adversary proceedings were filed. The first one (No. 05-00102) was filed by Debtors against Hon. Luisa Colom García (Judge of the Puerto Rico Court of First Instance, Superior Court of Bayamon) and the members of the estate of María Josefa,

María de las Mercedes and José Antonio González Rodríguez, which included the Torres Defendants (the "González Estate"), to declare null and void a public auction of real property belonging to the González Estate and to recover damages for an alleged violation of the automatic stay provisions of 11 U.S.C. § 362(a). In this adversary proceeding, the this court rendered an *Opinion & Order* (Adv. Proc. 05-00102 Docket No. 145) on December 18, 2007 whereby it asserted jurisdiction under 11 U.S.C. §§ 157 & 1334 but proceeded to dismiss it under Fed. R. Civ. P. 12(b)(1) for failure to state a claim upon which relief could be granted. In the *Opinion & Order*, this court expressly adopted a determination made by the Puerto Rico Court of Appeals (the "PR Court of Appeals") ruling that Debtors "own 78.54% of the Gonzalez Estate", which "means that they have a credit against the product of the sale of the subject properties and does not imply ownership of the real properties owned by the Gonzalez Estate", and that the Bankruptcy Court has "exclusive jurisdiction to determine what is property of the bankruptcy estate" (Adv. Proc. 05-00102, Docket No. 145, p. 17).

In the instant adversary proceeding filed by the Chapter 7 Trustee on October 29, 2010, Plaintiff seeks a determination that Debtors' Bankruptcy Estate has a 78.54% or approximately $2,878,491 in the proceeds of the sale of certain real properties belonging to the González Estate. Thus, as proposed by Plaintiff, after this court determines that 78.54% of the sale proceeds are property of the estate, it may order the Clerk of the Puerto Rico Court of First Instance, Superior Court of Bayamon (the "PR Court"), to transfer the funds representing approximately the amount of $2,878491.00, plus accrued interests, corresponding to Debtor's participation in the public auction of the properties of the González Estate. The proceeds are consigned at the PR Court. See Docket No. 1.

On April 6, 2011, the Torres Defendants filed their *Answer to the Complaint* (Docket No. 45). On October 3, 2011, the Torres Defendants filed the *Motion to Dismiss* alleging that: (*I*) the Courts of the Commonwealth of Puerto Rico have assumed jurisdiction over the controversy which Plaintiff wishes to litigate in Bankruptcy Court; (*ii*) before the commencement of the instant adversary, the validity of the sale contracts upon which Debtors acquired the 78.54% participation of the González Estate had been challenged before the PR Court and the PR Court of Appeals; and (*iii*) this court lacks subject-matter jurisdiction pursuant to Stern v. Marshall, 131 S. Ct. 2594, 180 L.Ed. 2d 475

(2011), because "claims that are keyed only to state law rights or privileges are to be left to the state courts to decide"[1]. The Torres Defendants further sustain that because the PR Courts assumed jurisdiction over the validity of the contracts controversy, this adversary proceeding is non-core in this case pursuant to 28 U.S.C. § 157(b)(2), and that the Stern decision precludes this court to entertain it since it is purely a matter of state law with no federal claims or issues involved and therefore this court has no authority to intervene and deprive state judicial authorities of their duty and right to rule upon state claims.

On October 18, 2011, the Trustee filed an *Answer* to the *Motion to Dismiss* (Docket No. 92) arguing that this case is a core proceeding under Section 157(b)(2) of the Bankruptcy Code and that it is distinguishable from Stern because contrary to the latter, which was a defamation case and a tortious interference claim that had nothing to do with the administration of the bankruptcy estate, in the instant case the Trustee is particularly requesting the turnover of the property of the bankruptcy estate, namely the monies deposited at the PR Court. Plaintiff concludes that a turnover proceeding is a "matter concerning the administration of the estate" under 11 U.S.C. § 157(b)(2)(A) and (O). See ¶¶ 7-8 of the Trustee's *Answer* (Docket No. 92, p. 2).

A pretrial hearing was held on October 21, 2011 in which the parties were granted 21 days to supplement their respective *Motion to Dismiss* (Docket No. 83) and *Answer* thereto (Docket No. 92). The hearing was continued without a date pending the resolution of the jurisdictional issue raised by the Torres Defendants. See the *Minute Entry* of the pretrial hearing at Docket No. 95.

On November 18, 2011, the Trustee filed the *Supplemental Answer to Defendants' Motion to Dismiss* (the "*Supplemental Answer*", Docket No. 104) after having requested a brief extension of 5 days to do so (Docket No. 102), which the court granted on November 16, 2011 (Docket No. 103). In it, Plaintiff avers that Stern should be narrowly construed and that although state courts have proficiency in certain matters such as divorce, alimony and child custody decrees, federal courts are not bared from adjudicating matters within federal jurisdiction. Plaintiff further contends that she seeks in the instant case a declaratory relief to participate in the distribution of the González Estate,

---

[1] See ¶ 14 of the *Motion to Dismiss* (Docket No. 83, p. 3).

3

which has been liquidated and which proceeds are currently consigned in the PR Court.  Plaintiff claims that those proceeds are property of the bankruptcy estate under 11 U.S.C. § 541 and that consequently she is entitled to recover them for the bankruptcy estate under 11 U.S.C. § 542.

The Torres Defendants did not supplement their *Motion to Dismiss* nor replied to Plaintiff's *Supplemental Answer*.

Applicable Law & Analysis

*(A)      Stern v. Marshall*

In 1978, Congress enacted a new Bankruptcy Code, created a new system of non-Article III[2] bankruptcy courts, and vested them with broad jurisdiction to hear and determine all "civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1471(b) (repealed 1984).  A few years later, in 1982, the United States Supreme Court declared said Section 1471 unconstitutional because it authorized non-Article III bankruptcy courts to finally decide a state law breach of contract action.  See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87 (1982).  As a result, in 1984 Congress revamped the bankruptcy jurisdictional scheme by recasting non-Article "unit[s]" of the district court "to be known as the bankruptcy court for that district"[3] and enacted Sections 1334(b) and 157 of the Code of Judiciary and Judicial Procedure to regulate the exercise of bankruptcy jurisdiction. 28 U.S.C. §§ 1334(b) and 157.  Section 1334 grants federal district courts jurisdiction over all bankruptcy proceedings.  Section 157(a) permits district courts to delegate that authority to the bankruptcy courts in their districts, who can in turn hear and determine all core proceedings arising under Title 11, subject to ordinary appellate review.  See 28 U.S.C. §§ 1334, 157(a) & 157(b)(1).  Furthermore, Section 157(c)(1) authorizes bankruptcy judges to only "hear" proceedings that are "related to" a case under Title 11, but cannot enter a final decision. 28 U.S.C. § 157(c)(1).  Bankruptcy judges can entertain those "related to" cases, but can

---

[2] Article III of the United States Constitution mandates that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish," and provides that the judges of those constitutional courts "shall hold their Offices during good Behaviour" and "receive for their Services[ ] a Compensation[ ] [that] shall not be diminished" during their tenure. Also see Stern v. Marshall, 131 S. Ct. at 2595.

[3] 28 U.S.C. § 151.

only issue proposed findings of facts and conclusions of law, which can be reviewed *de novo* by Article III judges.  See Stern v. Marshall, 131 S. Ct. at 2610; 28 U.S.C. § 157(c)(1).

Stern v. Marshall held that bankruptcy courts, as a constitutional matter, cannot enter a final judgment on a counterclaim that did not arise under Title 11 or in a case under Title 11 arising out of state law with no link to federal law or regulations, even when 28 U.S.C. § 157(b)(2)© grants such authority.  The two controversies in that case were: (*I*) whether the Bankruptcy Court had the statutory authority under 11 U.S.C. § 157(b) to issue a final judgment on a counterclaim regarding an alleged tortious interference with the expectancy of a gift; and (*ii*) if statutory authority was found, whether conferring such authority on the bankruptcy court was or not constitutional.  Id. at 2599.  In its analysis, the Supreme Court explained that bankruptcy judges are not Article III judicial officers, and thus they have limited authority to resolve certain causes of action that the debtor (or bankruptcy trustees) may hold against others.  Id. at 2608-2612.  Therefore, the Supreme Court determined that "although ... Section 157(b)(2)© [of the Bankruptcy Code] permits the Bankruptcy Court to enter [a] final judgment on [a tortious interference] counterclaim, Article III of the Constitution does not." Id. at 2608.  The reasoning is the following: "[w]hen a suit is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789 and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." Id. at 2609 (quotations omitted).  Accordingly, in its lengthy analysis to determine when bankruptcy courts can issue final judgments, the Supreme Court reasoned that "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; **the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process**." Id. at 2618 (original italics; emphasis supplied).  This does not mean that the bankruptcy courts are completely devoid of jurisdiction to hear such matters.  See Refco, Inc. v. Krischner, 461 B.R. 181, 184 (S.B.D.N.Y. 2011) (explaining that the Stern v. Marshall analysis "is not a question about the [bankruptcy] court's subject-matter jurisdiction", but rather about the court's "ability to issue a final judgment").  It simply means that if the bankruptcy court entertains them, it may only address them by submitting proposed findings of fact and conclusions of law (unless the parties otherwise expressly consent in writing).  Also see

5

McCarthy v. Wells Fargo Bank, N.A. (In re El-Atrari), 2011 U.S. Dist. LEXIS 133423 at *8 (Bankr.E.D.Va., November 18, 2011) ("Regardless of whether the effect of Stern was to remove certain proceedings from the list of 'core proceedings' under § 157(b)(2) or simply to strike the phrase 'and determine' from § 157(b)(1), it does not follow that bankruptcy courts have lost all power to hear a fraudulent conveyance proceedings. ... [T]he bankruptcy court retains the authority to submit proposed findings of fact and conclusions of law that the district court then considers before entering a final judgment. § 157(c)(1).")

In summary, when considering their authority to issue final orders, bankruptcy courts must first consider whether they have the statutory authority to issue a final order in a matter before them. See Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). Stern v. Marshall, *supra*, further mandates that when doing so, a bankruptcy court must first consider whether it has the necessary statutory authority and if it does it must then consider if it has the constitutional authority to finally adjudicate the dispute.

The decision in Central Va. Cmty. College v. Katz, 546 U.S. 356, 363-364 (2006), provides the following guidance as to what constitutes a "fundamental bankruptcy matter": "Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts."

The instant case does not involve a counterclaim nor is it solely based on state law: it involves a request by the Trustee for the turnover of property that allegedly belongs to the bankruptcy estate under 11 U.S.C. §§ 541 & 542. As discussed below, that is one of the most fundamental core-procedures in bankruptcy cases that stems from federal law. The Stern doctrine does not impair this court's subject-matter jurisdiction over property of the bankruptcy estate.

*(B) Turnover of property to the bankruptcy estate*

Central to bankruptcy's collective debt-collection scheme is the creation of the bankruptcy estate under Section 541 of the Bankruptcy Code, 11 U.S.C. § 541. See William L. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law and Practice, 3rd Ed. § 61:1 (2012). After all, it is

from the bankruptcy estate that creditor's claims will be satisfied. Id. Notwithstanding, when a debtor files for bankruptcy, some of his/her/its property may be in possession of third parties. A trustee may gain possession of this property to add to the debtor's pool of assets through a turnover order pursuant to Section 542(a) of the Bankruptcy Code, which requires a third party in possession of "property that the trustee may use, sell, or lease under § 363" to deliver that property to the trustee. 11 U.S.C. § 542. Also see William D. Warren & Daniel J. Bussel, Bankruptcy, Foundation Press, 8th Ed. 2009, p. 36.

Section 542 was added to the Bankruptcy Code as part of the Bankruptcy Reform Act of 1978 to expand the trustee's power to "bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced," thereby ensuring that a broad range of property is included in the bankruptcy estate. Braunstein v. McCabe, 571 F.3d 108, 116 (1st Cir. 2009), citing United States v. Whiting Pools, Inc., 462 U.S. 198, 205, 207-08, 103 S. Ct. 2309, 76 L. Ed. 2d 515 (1983). It allows bankruptcy courts "to reach property in the hands of ... creditors and to expand the turnover power beyond reorganization to liquidation cases (as recommended by the National Bankruptcy Conference)." Braunstein v. McCabe, 571 F.3d at 121. Turnover disputes are core proceedings pursuant to Section 157(b)(2)(E) of the Code of Judiciary and Judicial Procedure, 28 U.S.C. § 157(b)(2)(E). Still, as previously discussed, that is not enough for this court to be able to issue a final determination on the controversy: "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." Stern v. Marshall, *supra*, 131 S. Ct. at 2618.

In the case at bar, the Torres Defendants allege lack of subject-matter jurisdiction because "the Courts of Puerto Rico have assumed jurisdiction over the controversy which the plaintiff wishes to litigate in Bankruptcy Court". *Motion to Dismiss*, Docket No. 83, p. 3, ¶ 15. However, the Torres Defendants have not placed this court in a position to even evaluate which controversies or allegations have been brought before the PR Courts. Moreover, the PR Court of Appeals already ruled that this court has "exclusive jurisdiction to determine what is property of the bankruptcy estate". See the *Opinion & Order* issued in Adv. Proc. 05-00102, Docket No. 145, p. 17. This court finds that a turnover action is a fundamental bankruptcy matter that "stems from the bankruptcy

7

itself" and "would necessarily be resolved in the claims allowance process" because it intricately hinges on the proper constitution of the bankruptcy estate. Stern v. Marshall, 131 S. Ct. at 2618. As ruled in Braunstein v. McCabe, a turnover proceeding "invokes the [bankruptcy] court's most basic equitable powers to gather and manage the property of the property of the estate". 571 F. 3d at 122. Therefore, this court has subject-matter jurisdiction to entertain the instant core adversary proceeding and can ultimately issue a final determination on its merits in accordance with Stern v. Marshall.

Conclusion

In view of the foregoing, the Torres Defendants' *Motion to Dismiss* is hereby denied.

SO ORDERED.

In San Juan, Puerto Rico, this 26th day of March, 2012.

Enrique S. Lamoutte
United States Bankruptcy Judge