IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                        :        CASE NO. 04-12461 (ESL)
                                              :
ELISEO MORALES GARCIA                         :
MARIBEL MENA MELENDEZ                         :
                                              :
     Debtors                                  :        CHAPTER 7
                                              :
NOREEN WISCOVITCH RENTAS                      :
                                              :
     Plaintiff/Trustee                        :
                                              :        ADVERSARY NO. 10-00170 (ESL)
          vs.                                 :
                                              :
ORLANDO GONZALEZ CLAUDIO;                     :
MERCEDES GONZALEZ CLAUDIO;                    :
*ET AL*.                                      :
                                              :
     Defendants                               :

OPINION AND ORDER

     This adversary proceeding is before this Court upon the *Motion [for] Summary Judgment* (Docket No. 148) filed by the Chapter 7 Trustee ("Plaintiff" or "Chapter 7 Trustee") of the estate of Eliseo Morales Garcia and Maribel Mena Melendez ("Debtors") and the *Reply to Plaintiff's Motion for Summary Judgment [and Cross Motion for Summary Judgment]* filed by co-defendants Héctor and René, both Torres Dávila (the "Torres Defendants", Docket No. 184).  The Plaintiff seeks the turnover of certain funds consigned at the Puerto Rico Court of First Instance, Superior Court of Bayamón (the "PR Court of First Instance") resulting from the public auction of certain properties in which the Debtors claim a participation of 78.54%.  The Torres Defendants, on the other hand, seek to nullify the contracts and transactions whereby the Debtors acquired said participation or, alternatively, they contend that equitable remedies warrant that they should be compensated in full prior to having the consigned funds in controversy turned over to the bankruptcy estate.  Also before the Court are several oppositions to Plaintiff's *Motion [for] Summary Judgment* filed by co-defendants Maria M. Molina Gonzalez and Manuel Gonzalez Alvarado[1] ("Molina-Gonzalez" and "Gonzalez-Alvarado", Docket Nos. 163 and 176) claiming that the Puerto Rico Court

---

[1] Co-defendants Molina-Gonzalez and Gonzalez-Alvarado have appeared through their attorney-in-fact Attorney Wilfreo Gonzalez Claudio.

of Appeals (the "PR Court of Appeals") annulled and voided the sales and deeds whereby the Debtors obtained their 78.54% participation of the properties in controversy and the Plaintiff's replies thereto (Docket Nos. 163, 165, 176 and 179). For the reasons stated below, the Plaintiff's *Motion [for] Summary Judgment* is hereby granted.

Procedural Background

Debtors Eliseo Morales García and Maribel Mena Meléndez filed a Voluntary Chapter 11 Bankruptcy Petition on December 9, 2004, Case No. 04-12461 (the "Lead Case"). On May 28, 2009, the case was converted to a Chapter 7 upon Debtors' request and on May 29, 2009, Noreen Wiscovitch-Rentas was appointed as Chapter 7 Trustee (the "Chapter 7 Trustee" or "Plaintiff"). See Lead Case Docket Nos. 205, 207 and 208.

During the course of the Lead Case, two previous adversary proceedings were filed. The first one (Adv. Proc. No. 05-00102) was filed by Debtors against Hon. Luisa Colom García (Judge of the Puerto Rico Court of First Instance, Superior Court of Bayamon) and the members of the estate of Maria Josefa, Maria de las Mercedes and Jose Antonio Gonzalez Rodríguez (the "Gonzalez Estate") to annul and void a public auction of real properties belonging to it and to recover damages for alleged violations to the automatic stay provisions in 11 U.S.C. § 362. An *Opinion and Order* (Adv. Proc. 05-00102 Docket No. 145) was entered in that proceeding on December 18, 2007 dismissing the case under Fed. R. Civ. P. 12(b)(1) for failure to state a claim upon which relief could be granted. The Debtors appealed that *Opinion and Order*[2] to the Bankruptcy Appellate Panel, which transferred the appeal to the District Court for the District of Puerto Rico (Case No. 07-02159 (ADC)) under 1st Cir. BAP R. 8001-3(b)(2). The appeal was dismissed on February 4, 2008. See Adv. Proc. 05-00102 Docket Nos. 148, 157 and 161.

The second adversary proceeding (Adv. Proc. No. 06-00135) was filed by the Debtors against Arsan, Inc. and its owners seeking damages for an alleged breach of contract and violations to the automatic stay and for the turnover of property of the bankruptcy estate (Adv. Proc. 06-00135 Docket No.1). That proceeding was subsequently settled and judgment was entered approving the

---

[2] That *Opinion and Order* is incorporated herein.

stipulation (Adv. Proc. 06-00135, Docket Nos.19, 20 and 25).

The third and instant adversary proceeding was filed by the Chapter 7 Trustee on October 29, 2010, whereby the Plaintiff seeks a determination that the bankruptcy estate owns 78.54% of the proceeds of the sale of certain real properties belonging to the González Estate that were sold in a public auction. Thus, she requests an order to the Clerk of the Puerto Rico Court of First Instance, Superior Court of Bayamon (the "PR Court of First Instance"), to turn over 78.54% of the proceeds of the public auction, representing approximately $2,878491.00, plus accrued interests. Said proceeds are currently consigned at the PR Court of First Instance. See Docket No. 1.

The Torres Defendants initially questioned this Court's subject-matter jurisdiction under Stern v. Marshall, 131 S. Ct. 2594 (2011). See Docket No. 83. On March 26, 2012, this Court issued an *Opinion and Order* (Docket No. 128), which is incorporated herein, wielding subject-matter jurisdiction over the instant proceeding[3]. The *Opinion and Order* was not appealed.

On May 3, 2012, the Plaintiff filed the *Motion [for] Summary Judgment* (Docket No. 148). She argues that the Debtors duly acquired the participation rights of the inheritance rights of several members of the Gonzalez Estate by virtue of various public deeds authorized by Notary Public Olga M. Shepard de Mari from 1996 through 1999, and that the sum of those participation rights amount to 78.54% of the total inheritance of the Gonzalez Estate. The Plaintiff also avers that the real properties of the Gonzalez Estate in controversy were sold at a public auction for $3,665,000.00 and that said amount was consigned at the for PR Court of First Instance. Thus, the Plaintiff seeks an order to have 78.54% of the proceeds of that auction be turned over to the bankruptcy estate.

On May 24, 2012, co-defendants Molina-Gonzalez and Gonzalez-Alvarado filed a *New Motion in Opposition of Summary Judgment ... and Asking for Complaint Dismissal* (Docket No. 163) arguing that the PR Court of Appeals "annulled all th[ose] sales and deeds"[4] whereby the Debtors acquired the 78.54% of the participation in the real properties of the Gonzalez Estate when it ruled that:

---

[3] The *Opinion and Order* is published at 471 B.R. 324 (Bankr. D.P.R. 2012).

[4] See Docket No. 163, pp. 3-4.

3

> Even in the case that intervenors [the Debtors in this case] show that they really substitute 78.54% of the heirs, specifying for the record the names and co-share percentages, the auction process does not affect them because from the very beginning what they were entitled to is a proportional share of the auction proceeds since they could never acquire in that manner, nor have they acquired, any concrete share *in rem* of any of the three properties described. Gonzalez Santiago v. Gonzalez Caruso, Case No. KLCE200401584 at p. 20[5], 2005 PR App. LEXIS 385 at *28, 2005 WL 808015 at *11.

On June 6, 2012, the Plaintiff filed an *Answer* to the *Opposition* filed by co-defendants Molina-Gonzalez and Gonzalez-Alvarado (Docket No. 164) asserting the Debtors paid $1,570,808.89 (part in money and part in promissory notes[6]) to purchase 78.54% of the participation of certain heirs in the Gonzalez Estate and that because those shares were duly purchased pursuant to the public deeds authorized by Notary Public Olga Shepard de Mari, the Debtors own and could have sold their 78.54% to any person for any price.

On June 13, 2012, co-defendants Molina-Gonzalez and Gonzalez-Alvarado filed a *Reply to Answer* (Docket No. 176) restating that the PR Court of Appeals declared null and void all the deeds in which the Debtors purchased their 78.54% participation in the Gonzalez Estate's properties, which to this date is *res judicata*.

On June 27, 2012, the Plaintiff filed an *Answer to Motion to Reply* (Docket No. 179) insisting that what the Debtors purchased was the "hereditary participation of several heirs" of the Gonzalez Estate, not the properties in controversy.

On July 6, 2012, the Torres Defendants filed their *Reply to Plaintiff's Motion for Summary Judgment [and Cross Motion for Summary Judgment]* (Docket No. 184). They contend that the Plaintiff's proposed facts "are undisputed" but claim other additional facts warrant summary judgment in their favor. In essence, they seek to nullify in this adversary proceeding all the options contracts and subsequent purchase agreements that the Debtors executed with them for lack of licit cause arguing that those documents contravene Article 95 of the Puerto Rico Mortgage Law, 30

---

[5] The complete opinion by the PR Court of Appeals was filed by the Torres Defendants in their *Opposition to Motion for Summary Judgment* (Docket No. 154, pp. 61-81). A certified translation of that same opinion was filed in Adv. Proc. 05-00102, Docket No. 123-1, pp. 1-8.

[6] Copies of the promissory notes were filed at Docket No. 97, pp. 5-24.

L.P.R.A. § 2316. In the alternative, they allege that they are entitled to equitable remedies such as a constructive trust and/or payment of their claims under the unjust enrichment tort doctrine[7].

On August 14, 2012, the Plaintiff filed a *Reply to Co-Defendants Hector and Rene Torres['] Reply to Motion for Summary Judgment* (Docket No. 194) contending that in regards to the "equitable remedies", the "purpose of the Bankruptcy Code is that all creditors are in the same position" and that "all the creditors are owed money by the Debtors and are not being paid preferably". Therefore, she sustains that "all unsecured creditors in this case are in the same position".

A hearing was held on September 4, 2012, to consider the Plaintiff's *Motion [for] Summary Judgment* and oppositions and replies thereto (Docket Nos. 205 and 206). After considering the parties' arguments, the Court determined that the issue of whether or not the Debtors' purchase of the hereditary rights is valid has not been decided by the Puerto Rico Courts or this Court. The Plaintiff was granted 45 days to supplement her *Motion [for] Summary Judgment* and Defendants were granted 30 days thereafter to reply.

On October 29, 2012, the Plaintiff filed a *Supplemental ... Motion for Summary Judgment and Reply to Defendants['] Counter Summary Judgment* (Docket No. 194). She contends that in their *Reply to Plaintiff's Motion for Summary Judgment [and Cross Motion for Summary Judgment]* (Docket No. 184), the Torres Defendants allege "irrelevant facts" to "confuse this ... Court" and that the only relevant facts are the ones she exposed in her *Motion [for] Summary Judgment.* She argues that 21 heirs of the Gonzalez Estate consented to sell their participation in the Gonzalez Estate by executing the corresponding deeds before Notary Public Olga M. Shepard de Mari and that there was a legitimate cause and object in those transactions: the object being the participation of the heirs in the Gonzalez Estate; the cause and consideration being the 10% of the purchase price[8] that

---

[7] In their *Answer to the Complaint*, the Torres Defendants raised the unjust enrichment doctrine and nullity of the public deeds as affirmative defenses (Docket No. 45, pp. 3-4, ¶ 25 and 29), but not the constructive trust defense.

[8] Copies of the money orders of the payments of that 10% of the purchase price to different heirs are found at Docket No. 97, pp. 25-30, and Docket No. 184, p. 58.

Debtors paid to 20 of the heirs when they signed the deeds and the promissory notes of the remaining balance that were given to each and one heir (Orlando Gonzalez Claudio) who was paid in full. Therefore, she concludes that because the properties of the Gonzalez Estate were converted into money by virtue of the public auction authorized by the PR Court of First Instance, the bankruptcy estate is now entitled to 78.54% of those proceeds. The Plaintiff further avers that the Torres Defendants are not entitled an equitable constructive trust because the Bankruptcy Code already establishes a distribution scheme. As to the unjust enrichment argument, the Plaintiff argues that in Puerto Rico, equitable common law remedies are not available to contractual transactions. She thus ascertains that the Torres Defendants' arguments for equitable remedies are made to gain a superior claim over other unsecured creditors, which contravenes the distribution scheme established in Sections 502, 503, 506, 507 and 727 of the Bankruptcy Code.

No further replies were subsequently filed[9].

### Material Uncontested Facts

From the totality of the record, the following material facts are uncontested:

1. The Gonzalez Estate consists of the following real estate properties: (a) Parcel A located in Vega Baja, Rio Abajo Ward (plot no. 781 registered at page no. 206 of book 17 of the Bayamon Property Registry, 4th Section), from which several other lots were subsequently segregated; (b) Parcel B located in Vega Baja, Rio Abajo Ward (plot no. 896 registered at page no. 160 of book no. 20 of the Bayamon Property Registry, 4th Section) from which several other lots were subsequently segregated; and (c) Parcel C located in Vega Baja, Rio Abajo Ward (plot no. 275 registered at page no. 78 of book no. 8 of the Bayamon Property Registry, 4th Section) (hereinafter the "Real Estate Properties" or "Real Properties").

2. The Debtors acquired from the following heirs in the Gonzalez Estate their respective hereditary shares on each of the Real Estate Properties by virtue of the following deeds executed

---

[9] The deadline to file replies to Plaintiff's supplemental brief was set for November 28, 2012. See Docket Nos. 205, 206 and 223. No motions for extension of time were filed to that effect.

6

before Notary Public Olga M. Shepard de Mari in the following methods of payment[10]:

| | Heirs in the Gonzalez Estate | Percent in the Gonzalez Estate | Deed No. | Date of Deed | Value of transaction | Method of Payment |
|---|---|---|---|---|---|---|
| 1. | Orlando Gonzalez Claudio | 1.1702% | 3 | 11/26/1996 | $23,406.75 | Paid in full |
| 2. | Mercedes Gonzalez Claudio | 1.1702% | 6 | 5/24/1999 | $23,406.75 | $1,000 received prior to execution of the deed; PN $22,406.75 |
| 3. | Carmen M. V. Gonzalez Santiago | 12.0081% | 23 | 11/4/1999 | $240,162.03 | $24,162.03 at closing; PM $216,146.37 |
| 4. | Estefania Rolon Claudio | 5.5393% | 24 | 11/4/1999 | $110,786.18 | $11,078.61 at closing; PM $99,707.57 |
| 5. | Lizette M. Marchand Gonzalez | 3.0795% | 25 | 11/4/1999 | $61,590.77 | $6,159.08 at closing; PM $55,431.69 |
| 6. | Magali M. Marchand Gonzalez | 3.0795% | 26 | 11/4/1999 | $61,590.77 | $6,159.08 at closing; PM $55,431.69 |
| 7. | Jesus V. Simon Gonzalez | 0.5901% | 27 | 11/4/1999 | $11,802.90 | $1,180.20 at closing; PM $10,622.70 |
| 8. | Maria C. Simon Gonzalez | 0.5901% | 28 | 11/4/1999 | $11,802.90 | $1,180.20 at closing; PM $10,622.70 |
| 9. | Rosa M. R. Gonzalez Santiago | 9.2386% | 30 | 11/10/1999 | $184,772.32 | $18,477.23 at closing; PM $166,317.09 |
| 10. | Juan R. Gonzalez Rivera | 1.9969% | 31 | 11/19/1999 | $39,938.24 | $3,993.83 at closing; PM $35,944.42 |

[10] "PN" refers to "Promissory Note" followed its corresponding amount. The promissory notes were issued during each transaction. See Docket No. 148-1, pp. 1-31. There is no evidence from the record that the promissory notes were secured. Furthermore, several of these heirs filed unsecured proof of claims for the sale of their hereditary participations. See Claims Register Nos. 35-1 and 35-2 (filed by Olga E. Ortiz Gonzalez), 36-1 and 36-2 (filed by Aida Rosa Gonzalez Rivera), 37-1 and 37-2 (filed by Carlos I. Gonzalez Nogueras), 38-1 and 38-2 (filed by Octavio M. Gonzalez Rivera), 39-1 and 39-2 (filed by Juan R. Gonzalez Rivera), and 40-1 (filed by Eliso Martinez Gonzalez).

| 11. | Octavio M. Gonzalez Rivera | 1.9969% | 32 | 11/19/1999 | $39,938.24 | $3,993.83 at closing; PM $35,944.42 |
| 12. | Aida R. Gonzalez Rivera | 1.9969% | 33 | 11/19/1999 | $39,938.24 | $3,993.83 at closing; PM $35,944.42 |
| 13. | Carlos I. Gonzalez Nogueras | 1.9969% | 34 | 11/19/1999 | $39,938.24 | $3,993.83 at closing; PM $35,944.42 |
| 14. | Nelson J. Marchand Gonzalez | 3.0795% | 35 | 11/19/1999 | $61,590.77 | $6,159.08 at closing; PM $55,431.69 |
| 15. | Rene E. Torres Davila | 2.7706% | 36 | 11/19/1999 | $55,412.53 | $5,541.25 at closing; PM $49,871.28 |
| 16. | Hector A. Torres Davila | 2.7706% | 37 | 11/19/1999 | $55,412.53 | $5,541.25 at closing; PM $49,871.28 |
| 17. | Sandra E. Molina Gonzalez | 2.3400% | 38 | 11/19/1999 | $46,800.58 | $4,680.05 at closing; PM $42,120.53 |
| 18. | Josefa M. Gonzalez Vega | 8.5032% | 39 | 11/19/1999 | $170,064.51 | $17,006.41 at closing; PM $153,058.10 |
| 19. | Maria M. Molina Gonzalez | 2.3400% | 40 | 11/19/1999 | $46,800.58 | $4,680.05 at closing; PM $42,120.53 |
| 20. | Olga E. Ortiz Gonzalez | 7.9872% | 42 | 11/19/1999 | $159,744.61 | $15,974.46 at closing; PM $143,770.15 |
| 21. | Manuel M. Gonzalez Alvarado | 4.2954% | 43 | 11/19/1999 | $85,908.45 | $8,590.95 at closing; PM $77,317.90 |
| | **TOTAL** | **78.54%** | | | | |

See Docket Nos. 1 and 148-1, pp.1-31.

3.      On December 2, 2004, the Court of First Instance issued an *Order* to sell the Real Estate Properties at public auction.  Docket No. 184, p. 65; Adv. Proc. 05-00105 Docket No. 123-1, p. 5.  Pursuant to that *Order*, on December 20, 2004, the Real Estate Properties were sold at a public

8

auction ordered by the PR Court of First Instance in the amount of $3,665,000.00. See Docket No. 68, p. 68; Adv. Proc. 05-00105 Docket No. 123-1, p. 8.

4.     The proceeds from the public auction are currently consigned at the PR Court of First Instance in Case No. DAC1999-1252 (Docket No. 184, p. 76; Adv. Proc. 05-00102 Docket No. 123-2, p. 8).

5.     The Debtors defaulted payments on the unsecured promissory notes that they gave defendants.

Legal Analysis and Discussion

*(A)     Standard for Summary Judgment*

Fed. R. Bankr. P. 7056 makes Fed. R. Civ. P. 56 applicable to adversary proceedings. Fed. R. Civ. P. 56 provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056. See also In re Colarusso, 382 F.3d 51, 58 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright, Miller & Kane, Federal Practice and Procedure: 3d § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322. The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

9

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) cert. denied 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). Also see López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990) cert. denied 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The

nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

The court is required to view the pleadings in their entirety when passing a request for summary judgment. 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2722 at 368. To do so, it may consider affidavits, depositions, admissions, answers to interrogatories and similar material to determine whether or not any of the post-pleading material suggests the existence of any other triable genuine issues of material fact. Id., § 2721 at 365-366.

Fed. R. Civ. P. 56 was extensively rewritten in 2010. See 10B Wright, Miller & Krane Federal Practice & Procedure: Civil 3d § 2737. The summary judgment standard now appears in subsection (a) of Fed. R. Civ. P. 56, rather than at subsection (c). The amended rule, however, does not change the standard for summary judgment. See Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782, n.4 (1st Cir. 2011).

In this case, the uncontested facts are supported by the evidence in the record and they are not disputed by the parties. Thus, summary judgment is warranted.

*(B)     Property of the Bankruptcy Estate*

Subject to the debtor's right to reclaim certain property as exempt under 11 U.S.C. § 522, when a debtor files a bankruptcy petition, "all [of his/her/its] legal and equitable interests ... in property as of the commencement of the case" become part of the bankruptcy estate. 11 U.S.C. § 541(a). The bankruptcy estate is created automatically by operation of law immediately after the bankruptcy petition is filed. See 11 U.S.C. § 541(b); Nancy C. Dreher and Joan N. Feeny, Bankruptcy Law Manual, Volume 1 §§ 5:1-5:2 (2011-12) pp. 872-874. "It is from this central core of estate property that the debtor's creditors will be paid". Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 541.01 (16th ed. 2012). Section 726 of the Bankruptcy Code sets forth the distribution scheme of property of the estate in Chapter 7 cases.

The Court must determine if the Debtors duly acquired 78.54% of the Real Estate Properties in controversy under Puerto Rico law, for "[p]roperty interests are created and defined by state law". Stern v. Marshall, 131 S. Ct. at 2616, citing Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co., 549 U.S. 443, 451 (2007), all quoting Butner v. United States, 440 U.S. 48, 55

(1979).

*(C)     Did the Debtors Acquire 78.54 % of the Real Estate Properties?*

There is no dispute that the Debtors and 21 heirs in the Gonzalez Estate executed public deeds before Notary Public Olga M. Shepard de Mari to sell to Debtors their hereditary shares in the Real Estate Properties and that the addition of those hereditary shares amount to 78.54%.

Co-defendants Molina-Gonzalez and Gonzalez-Alvarado contend that the PR Court of Appeals "annulled all [those] sales and deeds" in its opinion issued on February 9, 2005 in case no. KLCE200401584 (Docket No. 163).  This Court is not moved by that argument.  A careful analysis of the PR Court of Appeals' opinion (Docket No. 184, pp. 61-81; Adv. Proc. 05-00102 Docket No. 123-1, pp. 1-8) reveals that the intermediate state court only considered the option agreements entered between the Debtors and certain heirs in the Gonzalez estate as follows:

> The record does not show which, if any, of the heirs ... assigned or sold their rights and proportional shares to a third party, if this has happened.  Therefore, it is not possible to conclude **from the record** whether or not intervenors Morales-Mena [the Debtors] have an undivided share in the aforementioned properties [the Real Estate Properties].
> ...
> We have also concluded from the record that the "recognition" in favor of "... the intervenors Eliseo Morales and Maribel Mena regarding a credit equivalent to 78.54% of the minimum price of the property to be auctioned..." ... must be subject to a certain "PURCHASE OPTION OF ESTATE SHARE IN REAL ESTATE" that a number of co-heirs allegedly covenanted with intervenors, the Morales-Mena spouses. (Docket No. 123-2, pp. 5-6)

The PR Court of Appeals remanded that case to the PR Court of First Instance to address and decide "whether the Morales-Mena spouses really acquired an option right over 78.54% of the shares and rights of the [Real Estate Properties], whether they exercised the option in time and whether the necessary consideration s for the subsequent sale of the estate shares and rights on the undivided estate took place..." (Docket No. 123-3, p. 5).  The conclusion and reasoning by the PR Court of Appeals do not determine that the subsequent purchase agreements between the Debtors and 21 heirs of the Gonzalez Estate are null and void.  Moreover, option agreements are preliminary in nature inasmuch "the holder has the power to decide whether to exercise the option ... in accordance with the will of the contracting parties".  Mega Media Holdings v. Aerco Broad. Corp., 852 F. Supp. 2d 189, 200 (D.P.R. 2012) quoting Zeta Enters. v. Puerto Rico, 145 D.P.R. 1, 10 (1998).  Also see Mayaguez Hilton v. Betancourt, 156 D.P.R. 234, 240 (2002) (defining an option contract as an

"agreement by which a party (the grantor, promisor, or optionor) grants to the other (the optionee), for a fixed term and under certain conditions, the exclusive power of deciding whether to execute a principal contract.") In this case, the option agreements became irrelevant and mooted by the actual subsequent purchase agreements, in other words, the principal contracts with their own object, cause and consideration. Thus, this Court determines that co-defendants Molina-Gonzalez and Gonzalez-Alvarado have not met their burden to demonstrate how the actual purchase agreements are null and void.

The Torres Defendants, on the other hand, take a different approach. They aver that the contractual consideration of the purchase agreements was "the interest of the debtors in the participation of the heirs in the [Real Estate Properties] which were object of the agreements" not "to acquire hereditary rights *in abstracto*, but rather specific properties with detailed descriptions" (Docket No. 184-, pp. 12-13, ¶¶ 31 and 33). Thus, the Torres Defendants contend that the "true cause or consideration of the agreement was to obtain title and ownership of the properties of the [Gonzalez Estate] not a mere abstract quota" (Docket No. 184, p. 13, ¶ 34), which is prohibited by Article 95 of the Puerto Rico Mortgage Law, 30 L.P.R.A. § 2316, and Article 102.1 of the Puerto Rico Mortgage Law Regulations, 30 L.P.R.A. § 870.379.

The evidence submitted by the Torres Defendants includes *Deed No. 32 of Purchase of Hereditary Rights* executed on November 19, 1999 before Notary Public Olga M. Shepard de Mari (Docket No. 184, pp. 48-57), whereby co-defendant Rene E. Torres Davila expressly sold to the Debtors the totality of his participation in the Real Estate Properties of the Gonzalez Estate[11] for $55,412.53, which was paid as follows: (a) $5,541.25 in a check delivered upon the execution of the deed; and (b) a promissory note in the amount of $49,871.28 (Docket No. 184, pp. 55, 58 and 59). Neither the cause, object or consideration in that *Deed* is illegal. The object is his hereditary rights in the Real Estate Properties described therein and the cause and consideration is the payment established therein. The argument of illicit cause in the option agreements is without merits for the

---

[11] The specific participations in the Gonzalez Estate's Real Properties that he sold to the Debtors were detailed in *Deed No. 36* as follows: (a) 4.2220% in Parcel A; (b) 1.7800% in Parcel B; and (c) 0.5600% in Parcel C (Docket No. 184, p. 55).

reasons previously stated.  But even if the cause and consideration of the option agreements trickle down onto the subsequent purchase agreement, the end result would not vary.  Article 95 of the Puerto Rico Mortgage Law reads as follows:

> For purposes of the Registry, the hereditary succession document, contains the will or the succession of heirs in absence of a will, be it of a judicial nature or in agreement with §§ 2155 et seq. of Title 4, known as the "Non Contentious Notarial Matters Act".
>
> The hereditary right shall be recorded in the names of all heirs when it involves property acquired by inheritance and the corresponding partition has not yet been made, if one of the interested parties requests it; stating in the entry, the shares corresponding to each of them and the right to the usufructuary share of the surviving spouse, if any. In the event that property presumed to be community property is involved, registration shall only be made of the share that might correspond to the deceased spouse.
>
> When a single heir is involved and there is no one authorized to adjudicate the inheritance, the succession document shall be equivalent to adjudication when it comes to recording the rights that appear in the name of the predecessor in title directly in the heir's name. Nor shall prior adjudication be necessary when a single person has acquired all the shares that the interested parties held in the hereditary right.
>
> In the cases referred to in the two preceding paragraphs, if the property does not appear described in the documents submitted, a paper signed by any interested party shall be attached in which the property is described with the numbers that the properties have in the Registry, stating the volume and folio where they appear recorded in the name of the person from whom the right is derived.
>
> In order to record concrete adjudications, the property or unsegregated parts of the same which belong or are adjudicated to each owner or heir must be specified in a public document or by final judicial resolution, or also by public document to which all the interested parties have given their consent, if only one part of the estate were adjudicated and they should have free disposal of it.
>
> **Alienations or liens of specific shares in a property which has not been previously adjudicated in the corresponding partition shall not be recorded.** 30 L.P.R.A. § 2316 (emphasis added).

Puerto Rico's Supreme Court has ruled that the alienation of specific partial allotments of a property prior to adjudication does not have access to the Property Registry.  See Gierbolini v. Registrador, 151 D.P.R. 315, 321 (2000). The purpose of that provision is to protect future acquirers against non-express conditions, since those alienations are subject to future partitions among the heirs.  The totality or part of the hereditary rights, in abstract, is transferable. Id. at 322, citing from 33 Diario de Sesiones de la Asamblea Legislativa de Puerto Rico 1122, 1122-1123 (1979).

14

Therefore, the only consequence of applying Article 95 is the Property Registrar's denial to record any deed whereby an heir in an estate transfers his/her hereditary rights.  That does not necessarily mean that the deeds in the instant case are null *per se*.  As a general rule, Puerto Rico's Property Registry is only declarative in nature, meaning that citizens are not mandated to record their transactions to constitute their validity[12].  See Luis R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, San Juan, Jurídica Editors, 3rd ed., 2012, pp. 42-43, citing Rivera v. Rivera, 30 D.P.R. 851, 852 (1922).  The Court therefore determines that from the evidence presented by the Torres Defendants, there is no illicit cause in the purchase agreements.

In view of the foregoing, this Court finds that the Debtors duly purchased 78.54% of the Real Estate Properties of the Gonzalez Estate and because the Debtors acquired said shares pre-petition, they are now part of the bankruptcy estate pursuant to Section 541 of the Bankruptcy Code.  And since the Real Estate Properties were sold at public auction and the proceeds are consigned at the PR Court of First Instance, the bankruptcy estate is entitled to retrieve the equivalent of 78.54% of those proceeds.

*(D)     Equitable Remedies*

The Torres Defendants invoke this Court's equitable powers to "move the Court to order payment to defendants of the monies owed to them under the promissory notes signed in November 19, 1999" (Docket No. 184, p. 16, ¶ 53).  They allege that the Debtors "never paid" for the 78.54% participation in the Real Estate Properties of the Gonzalez Estate (Docket No. 184, p. 17, ¶ 60).  They contend that "it is only fair ... that from the proceeds of [the] public auction, defendants are paid what they are owed" and "any balance that remains, would have belonged to the Debtor[], and thus becomes property of the estate" (Docket No. 184, p. 16, ¶ 54).  They made their intention in seeking equitable remedies clear:

> This Court has the opportunity to make it right.  The Court can calculate the amounts owed to defendants pursuant to the promissory note[s] plus any interest for late

---

[12] Exceptions to that general rule are mortgages and horizontal properties, none of which is applicable in the instant case.  See Luis R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, San Juan, Jurídica Editors, 3rd ed., 2012, pp. 43-52.

15

payment, and order the disbursement.  Any balance left in the account would be turned over to [the] Debtors' bankruptcy estate.  (Docket No. 184, p. 19, ¶ 70).

To that extent, they purport two equitable remedies: a constructive trust and the tort doctrine of unjust enrichment.  As further discussed, in reality, they constitute one remedy.

The Torres Defendants' arguments are flawed for two reasons.  First, the contention that the Debtors "never paid" for the hereditary shares in the Gonzalez Estate's Real Properties is misplaced. Article 1334 of Puerto Rico's Civil Code expressly allows a purchaser "to pay a certain price ... in money or **in something representing the same**".  31 L.P.R.A. § 3741 (emphasis added).  A promissory note constitutes "something representing money".  Puerto Rico's Law of Commercial Transactions defines a "promissory note" as a "promise" and a "promise ... [m]eans a written undertaking to pay money signed by the person undertaking to pay."  19 L.P.R.A. §§ 503 and 504(e).  Once issued, a promissory note constitutes a credit towards the person to whom it is issued, in this case the defendants.  See *e.g.* FDIC v. Registrar, 11 P.R. Off. Transl. 754, 758-759; 111 D.P.R. 602, 605 (1981) (a promissory note "represents a credit to be paid").

Second, it is well settled that "equitable powers ... in the bankruptcy courts must and can only be exercised **within the confines of the Bankruptcy Code**".  Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) (emphasis added).  Also see HSBC Bank USA v. Branch (In re Bank of New Engl. Corp.), 364 F.3d 355, 362 (1st Cir. 2003) ("equitable powers possessed by bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code")[13]; In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2nd Cir. 1994) ("We have repeatedly emphasized the importance of the bankruptcy court's equitable power."  But "[t]his power is not unlimited. Thus, a bankruptcy court may not exercise this power in contravention of provisions of the [Bankruptcy] Code."); Tese-Milner v. Moon (In re Moon), 385 B.R. 541, 551 (Bankr. S.D.N.Y. 2008) (while "bankruptcy courts are courts of equity, they are nevertheless courts of law.  It is well settled that a bankruptcy court's equitable powers are not boundless, and that they cannot be exercised in direct contravention of provisions of the Code."); Alan N. Resnick & Henry J. Sommer,

---

[13] Citing Norwest Bank Worthington v. Ahlers, 485 U.S. at 206.

2 Collier on Bankruptcy ¶ 105.01[2] at 105-6 (16th ed. 2012) ("[I]t should be universally recognized that the [equitable] power granted to the bankruptcy courts under Section 105 is not boundless and should not be employed as a panacea for all ills confronted in the bankruptcy case.")  Having determined that the Debtors duly acquired the defendants' hereditary shares in the Gonzalez Estate's Real Estate Properties, which therefore have become part of the bankruptcy estate, this Court has no authority to exercise its equitable powers to trump the distribution scheme of the property of the bankruptcy estate established in 11 U.S.C. § 726 or provide the Torres Defendants with a priority status that is not afforded to them in the Bankruptcy Code[14] in detriment of other unsecured creditors.

With that initial framework, the Court will proceed to analyze the constructive trust remedy sought by the Torres Defendants.

*(E)  Constructive Trusts*

A constructive trust is a court-imposed trust relationship, created *ex post facto*, to return property to its rightful owner.  Generally, a constructive trust may be imposed when one party has acquired legal title to property under circumstances that such party could not, in good conscience, retain the beneficial interest thereto.  See Zimmermann v. Epstein Becker & Green, P.C., 657 F.3d 80, 83 (1st Cir. 2011), citing Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002); 76 Am. Jur. 2d Trusts § 168.  A constructive trust presupposes a wrongful acquisition of property such as misappropriation, fraud, mistake, breach of duty, abuse of confidential relations and duress or undue influence.  See Emily L. Sherwin, Constructive Trusts in Bankruptcy, 1989 U. Ill. L. Rev. 297, 329 (Jan. 1989); Restatement of Restitution § 166; CRS Steam, Inc. v. Engineering Resources, Inc. (In re CRS Steam, Inc.), 225 B.R. 833, 836 (Bankr. D. Ma. 1998).  The standard to establish a constructive trust requires clear and convincing evidence.  See Halart, L.L.C. v. Indep. Auto Warehouse, Inc. (In re Twin B Auto Parts, Inc.), 271 B.R. 71, 84 (Bankr. E.D. Va. 2001); Gembitsky v. DeSteph (In re DeSteph), 2010 Bankr. LEXIS 1593 at *30; 2010 WL 2206983 at *10

---

[14] Section 507 of the Bankruptcy Code govern the priority status of creditors at the time of distribution.  No defendant in this case has claimed any priority whatsoever.

(Bankr. D.N.H. 2010). Its central objective is to prevent unjust enrichment. Zimmermann v. Epstein Becker & Green, P.C., 657 F.3d at 83.

In determining whether a constructive trust should be imposed upon property within the bankruptcy estate in a particular set of circumstances, courts generally look in the first instance to state law. Cadle Co. v. Mangan (In re Flanagan), 503 F.3d 171, 181 (2nd Cir. 2007), citing Butner v. United States, 440 U.S. 48, 54-55 (1979). Also see In re Dameron, 155 F.3d 718, 722 (4th Cir. 1998) (examining Virginia law to determine whether trust over property of estate should be established); In re Greenbelt Road Second Limited Partnership, 1994 WL 592766, 1994 U.S. App. LEXIS 30440 (4th Cir. 1994) (unpublished opinion) (examining Maryland law to determine whether the appellants were entitled to a constructive trust); Haley, Chisholm & Morris, Inc. v. Parrish, 127 B.R. 366, 369 (W.D. Va. 1991) (reviewing Virginia law); Connecticut General Life Ins. Co. v. Universal Ins. Co., 838 F.2d 612, 618-19 (1st Cir. 1988) (whether there is a trust relationship is a question of state law); In re Whitacre Sunbelt, Inc. 211 B.R. 411, 418 (Bankr. N.D. Ga. 1997) (examining Georgia constructive trust statute).

In Puerto Rico, "a constructive trust may be imposed on realty in Puerto Rico under the appropriate circumstances." United States v. Garcia, 532 F. Supp. 325, 331-332 (D.P.R. 1981), citing 31 L.P.R.A. § 7; Rossy v. Superior Court, 80 P.R.R. 705 (1958); Luperena v. Transportation Authority, 79 P.R.R. 438 (1956); Fernandez v. Laloma, 56 P.R.R. 348, 357 (1940); In re Las Colinas, Inc., 294 F. Supp. 582, 606 (D.P.R., 1968). Also see Corporacion Insular de Seguros v. Reyes-Munoz, 849 F. Supp. 126, 135 (D.P.R. 1994) ("Puerto Rico also recognizes the creation of constructive trusts"). "A constructive trust may be imposed [in Puerto Rico] upon real property in the possession of third persons that has been acquired with funds **wrongfully or fraudulently obtained**". United States v. Garcia, 532 F. Supp. at 332 (emphasis added), citing Restatement of Restitution, § 208(1); 76 Am. Jur. 2d, Trusts, § 257. Bankruptcy courts have also held that a constructive trust should be imposed where there has been some wrongdoing or breach of fiduciary duty. See Haley, Chisholm & Morris Inc., 127 B.R. at 370. The constructive trust equitable doctrine was incorporated in Puerto Rico through Fernandez v. Laloma, 56 D.P.R. 367 (1940), and Porrata-Doria v. Fajardo Sugar Co., 57 D.P.R. 628 (1940), to prevent unjust enrichment. The

18

doctrine of unjust enrichment, however, is not applicable in Puerto Rico when there is a written contract between the parties. Compañía Popular v. Corte, 63 D.P.R. 121, 129 (1944). When there is a contract, there is no need to resort to equity for only the contract governs. Id. at 129. It then follows that in Luperena v. Autoridad de Transporte, 79 D.P.R. 464 (1956), the Supreme Court circumscribed the use of constructive trusts to "situations not foreseen by strict law". Id. at 573.

Bankruptcy courts have also imposed constructive trusts. For instance, in Claybrook v. Consolidated Foods Inc. (In re Bake-Line Group LLC), 359 B.R. 566 (Bankr. D. Del. 2007), a chapter 7 trustee filed a preference action against the transferee of funds the debtor paid it after the debtor realized it erroneously received and deposited funds, which were intended for the transferee. In denying the relief requested by the trustee, the court held, that the debtor held the funds for the transferee/defendant in a constructive trust. Accordingly, the debtor never had an interest in the funds, and those funds did not become part of the bankruptcy estate. Id. at 575.

"Many [bankruptcy] courts nonetheless recognize the tension that exists between the state law principle of constructive trust, which benefits just one party, and the bankruptcy principle favoring general equality among those having similar rights." In re CRS Steam, Inc., 225 B.R. at 836. Thus, many bankruptcy courts refuse to recognize constructive trusts based on a creditor's claim of entitlement to one unless state law has impressed property with a constructive trust prior to its entry into bankruptcy. Poss v. Morris (In re Morris), 260 F.3d 654, 666 (6th Cir. 2001), citing XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.), 16 F.3d 1443, 1451 (6th Cir. 1994).

The Torres Defendants have failed to show any fraudulent wrongdoing or duress by the Debtors by clear and convincing evidence in the acquisition of their shares in the Gonzalez Estate's Real Properties. They only allege that lack of payment on the promissory notes is unfair. Pursuant to Puerto Rico jurisprudence, a constructive trust doctrine is only applicable to "**situations not foreseen by strict law**". Luperena, 79 D.P.R. at 573 (emphasis added). That is not the situation in the instant case, for there are two separate written contracts between the Torres Defendants and the Debtors in regards to the method of payment whereby the of the Real Estate Properties –namely, the promissory notes and the purchase deeds– and Puerto Rico law provides for their execution and breach. No pre-petition constructive trust has been alleged or demonstrated. In addition, the Court

19

also notes that the equitable remedy of a constructive trust was not raised in the Torres Defendant's affirmative defenses in their *Answer to the Complaint* (Docket No. 45)[15].

For the reasons previously stated, the Torres Defendants' claim for a constructive trust for unjust enrichment is denied.

*(F)    Turnover of Property of the Bankruptcy Estate*

When a debtor files for bankruptcy, some of his/her/its property may be in possession of third parties. Section 542 of the Bankruptcy Code provides the mechanism to turnover property of the estate to the trustee wherever located. It requires a third party in possession of "property that the trustee may use, sell, or lease" to deliver that property to the trustee. 11 U.S.C. § 542. See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 542.01 (16th ed. 2012); William D. Warren, Daniel J. Bussel, David A. Skeel, Jr. Bankruptcy, Foundation Press, 9th ed. 2012, pp. 36-37.

Section 542 was added to the Bankruptcy Code as part of the Bankruptcy Reform Act of 1978 to expand the trustee's power to "bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced," thereby ensuring that a broad range of property is included in the bankruptcy estate. Braunstein v. McCabe, 571 F.3d 108, 116 (1st Cir. 2009), citing United States v. Whiting Pools, Inc., 462 U.S. 198, 205, 207-08 (1983).

In the instant case, because 78.54% of the Real Estate Properties belong to the bankruptcy estate, the Chapter 7 Trustee is entitled to recover that percent of the proceeds of the auction that are consigned at the PR Court of First Instance pursuant to Section 542.

Conclusion

In view of the foregoing, the Court grants Plaintiff's *Motion [for] Summary Judgment* and therefore orders the Clerk of the PR Court of First Instance to issue a check payable to Plaintiff

---

[15] The application of a constructive trust against a debtor in bankruptcy claiming that certain property is not part of the bankruptcy estate must be sought in an adversary proceeding. See Fed. Rs. Bankr. P. 7001(2) and 7001(9). Although the Torres Defendants did file a counterclaim against the Debtors or the Chapter 7 Trustee to impose a constructive trust, it would have sufficed if they had included that remedy as an affirmative defense in their *Answer to the Complaint* (Docket No. 45), for Fed. R. Civ. P. 8(c), applicable to adversary proceedings via Fed. R. Bankr. P. 7008(a), provides that if a party mistakenly designates a counterclaim as a defense, the court can treat it as though it was properly designated. The Torres Defendants, however, omitted that remedy altogether.

Noreen Wiscovitch Rentas, Chapter 7 Trustee, in the amount of 78.54% of the amount consigned proceeds of the public auction of the Real Estate Properties in Case No. 1999-1252, plus accrued interests, if any.

Judgment will be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 13th day of December, 2012.

Enrique S. Lamoutte
United States Bankruptcy Judge